Ftjld, J.
 

 This appeal, here by permission of the Appellate Division, poses a question which has been frequently litigated during the past several years: may rent increases, granted by the State Rent Administrator, to compensate a landlord for the installation of a capital improvement be revised by the Administrator when the landlord thereafter obtains an abatement of taxes by reason of the same improvement?
 

 The appellant owns a 20-family tenement in New York City, which it purchased in 1957. Up to 1955 the premises consisted of cold water unheated flats. In that year, the appellant’s predecessor in title installed central heating and obtained an increase in rents on the basis of such installation, pursuant to section 33 of the Rent and Eviction Regulations promulgated by the Rent Administrator. Rents had been $25 a month for three-room apartments and $33 a month for four-room units. The landlord’s application indicated an expenditure of $9,000 to make the improvement and an increase was granted of $12 a month for the three-room units and $16 a month for the four-room units, in conformity with the scale of $4 a month for each radiator installed, as set out in the Schedule of Rental Values issued by the Rent Commission.
 

 Thereafter, on December 31, 1955, the City of New York enacted a law permitting tax abatement to any owner who
 
 *200
 
 installed central heating (Local Laws, 1955, No, 118) and the owner made an application in September, 1956, for such relief. The application was granted; the city allowed the owner a tax abatement of $6,750, which amounted to 75% of the cost of the improvement, spread over a nine-year period, and tax exemption for a period of 12 years on the increase in the assessed valuation resulting from the improvement.
 

 Some months thereafter, in April of 1957, the appellant contracted to purchase the premises and, in connection with the sale, submitted to the Rent Commission for certification the rent roll which, of course, reflected the increases earlier allowed. The Commission certified the rent roll as submitted and some time later the appellant took title to the property.
 

 On December 19, 1957, the Administrator issued an Opinion, referred to as No. 120. Dealing with the
 
 “
 
 Effect of Tax Abatement on Rent Increases Otherwise Allowable for the Installation of Central Heating and Hot Water Systems and Other Improvements ”, the Opinion recites, in effect, that, when a tax abatement is allowed a landlord who had earlier obtained a rent increase for the same capital improvement, 1 ‘ the Local Rent Administrator will re-open the proceeding in order to give the tenant credit for two-thirds of the tax abatement pursuant to the second unnumbered paragraph of Section 33 of the Rent and Eviction Regulations.” In accordance with this Opinion, and in February of 1958, the Local Rent Administrator began a proceeding under section 33 of the Rent Regulations to revise and adjust the 1955 allowances to the appellant’s predecessor on the ground that there had been a substantial change in the basis on which those allowances had been granted. Some Weeks later, on February 28, 1958, orders were issued reducing the rents,
 
 prospectively,
 
 by $1.78 a month for the three-room apartments and $2.38 a month for the larger ones. These orders were affirmed by the State Rent Administrator, and the latter’s determination was confirmed by the court at Special Term and the Appellate Division in this article 78 proceeding brought by the appellant.
 

 Underlying the Rent Administrator’s decision is the thought that, when a rent increase is granted because of some capital improvement by the landlord, he is not entitled to a duplicating or multiple ‘ ‘ increase ’ ’ by way of a tax abatement from the city
 
 *201
 
 for the same improvement and that, if he obtains the abatement, it is only fair and proper that it be shared with the tenants through a prospective readjustment of the rent increases earlier allowed. This is good sense and sound law.
 

 The Rent Control Law empowers the Rent Commission to
 
 “
 
 adopt, promulgate, amend or rescind, such rules, regulations and orders as it may deem necessary or proper to effectuate the purposes of this act ” (State Residential Rent Law [L. 1946, ch. 274, as amd.], § 4, subd. 4, par. [a]). And section 33 of the State Rent and Eviction Regulations, which provides for the increase of rent, specifically authorizes the Administrator ‘ ‘ to revoke or modify any adjustment” previously made
 
 “
 
 if there has been a substantial change in the basis upon which such adjustment was granted. ’ ’ An increase in rent, on the basis of $4 for each radiator installed was undoubtedly authorized and proper. An incentive was thus accorded landlords to make needed and socially desirable improvements and the formula of $4 a radiator was thought to afford a fair base for assuring the landlord a recoupment of his cost in installing a central heating system within a reasonable time.
 

 The scheduled allowance—resulting in this case in rent increases of $12 and $16 a month — did not envisage or take into account any further benefits to the landlord by way of a further recoupment in the form of tax abatement or tax exemption from the city. Accordingly, when such tax abatement relief was later obtained by the landlord, the Rent Administrator was fully warranted in “ adjusting ” the rent increases previously granted, for, otherwise, the cost of the improvement would have been paid, in effect, twice, once by the tenants through rent increases and once by the city through tax abatement. The purpose of the local legislation was to assist owners to remove fire and health hazards and render less burdensome the replacement of inadequate and obsolete sanitary facilities by reducing the cost of the improvements by a grant of tax abatement. While the legislation permitted the owners to reduce their cost, it was never its design that the landlords, in addition, would be entitled to receive thoroughly duplicating rent increases based upon the total expenditures for the same improvements.
 

 
 *202
 
 The Rent Control Law and the Regulations promulgated under it contemplated that a landlord would receive a full measure of relief for any capital improvement such as central heating, but
 
 only one
 
 full measure of relief. In 1955, when the rents were adjusted at the rate of $4 a radiator, such full measure of relief was achieved; the increase was designed to afford the landlord complete compensation for the expenditures of the substantial sums made. The whole basis for this grant was significantly altered when the landlord’s request for remission of real estate taxes was granted by the city. The net effect of the change thus accomplished was that the landlord was now able to recoup almost the entire cost of the improvement as a windfall, in addition to the full relief already granted by the Rent Commission in the form of rent increases. Such a result was neither written into the law nor intended.
 

 The original increase was authorized by section 33 of the Rent Regulations and the same section provides for an adjustment of any increase previously granted “if there has been a substantial change in the basis upon which such * * * [increase] was granted. ” When a landlord, after having received the full measure of relief from the Rent Commission, deliberately seeks additional and duplicating relief, he plainly alters the basis upon which the relief from the Commission was granted. Only a revision of the relief initially granted, which will take into account the additional and duplicating factor, can re-establish the propriety of the basic relief. And so the lower courts, in confirming similar rulings by the Administrator, have consistently held. (See, e.g.,
 
 Matter of Hiltzik
 
 v.
 
 Weaver,
 
 16 Misc 2d 629, affd. 7 A D 2d 1023;
 
 Matter of Aronson
 
 v.
 
 Temporary State Housing Rent Comm.,
 
 17 Misc 2d 71;
 
 Matter of Harby Realty Co.
 
 v.
 
 Gilroy,
 
 17 Misc 2d 76;
 
 Matter of Raplee Realty Corp.
 
 v.
 
 Weaver,
 
 17 Misc 2d 78;
 
 Matter of Michael Heier, Inc.,
 
 v.
 
 Weaver,
 
 N. Y. L. J., Oct. 9,1958, p. 12, col. 2;
 
 Matter of Todar Realty Corp.
 
 v.
 
 Weaver,
 
 N. Y. L. J., Oct. 27, 1958, p. 12, col. 7;
 
 Matter of 2284 Second Ave. Corp.
 
 v.
 
 Weaver,
 
 17 Misc 2d 79.)
 

 . The appellant argues, however, that the doctrine of finality of administrative determination precludes the “ reopening” of the basic proceeding and, in addition, that a rule of estoppel
 
 *203
 
 prevents a reduction of the rent after the Commission had certified the rent roll containing the then current rents, including past increases.
 

 There was not, except in a most technical sense, a reopening of the original 1955 proceeding. As already amply appears, the $4 per radiator allowance made in that year was designed to recompense the landlord for installing a heating system. The tenants were assessed not only for the benefit which they were gaining, but to reimburse the landlord in part for the highly desirable capital improvement he had made. A change in circumstances and facts called for action to prevent a duplication of relief to the landlord, to prevent his receiving a double recoupment of cost. The new conditions required, in reason and in justice, that something be done, that the tenants be permitted to share somewhat in the benefits granted the landlord.
 
 Matter of Alamac Estates
 
 v.
 
 McGoldrick
 
 (2 N Y 2d 87), upon which the appellant relies, has nothing to do with the ease. All that the court there held was that the Administrator could not simply decrease, and
 
 retroactively,
 
 a scheduled increase on the basis of which the landlord had undertaken a major capital improvement. Indeed, in so ruling, the court explicitly observed that the Administrator may, ‘ ‘ under appropriate circumstances, change his determination” (p. 89). The present is quite obviously such a case.
 

 Nor does any rule of estoppel apply to conclude the Administrator from ruling as he has. Even assuming, contrary to law (see, e.g.,
 
 Matter of Rochester Tr. Corp.
 
 v.
 
 Public Serv. Comm.,
 
 271 App. Div. 406, 411, motion for leave to appeal denied 296 N. Y. 1061), that an administrative agency might be subject to the doctrine of estoppel, there would be no warrant for invoking it here. The Commission certified the rent roll submitted to it by the appellant before the latter actually took title, but the certification signified nothing more than that the rents set forth were the rents
 
 then
 
 being paid by the tenants. There was no representation, either express or implied, that those rents would remain constant or that they would not be adjusted if the facts required a change. The appellant knew, or should have known, that the 1955 allowances were adjustments effected under section 33 of the Rent Regulations and it knew, or should
 
 *204
 
 have known, that this very section empowered the Administrator to modify any previous ‘
 
 ‘
 
 adjustment ’ ’ if the basis upon which it had been granted was thereafter substantially changed. The grant of tax abatement and of partial tax exemption to the appellant’s predecessor in title — continuing in part during the appellant’s ownership—unquestionably represented the sort of substantial change which justified the Administrator’s further adjustment.
 

 The order appealed from should be affirmed, with costs.
 

 Chief Judge Conway and Judges Desmond, Dye, Froessel, Van Voorhis and Burke concur.
 

 Order affirmed.